# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PHILIP JAMES, WILLIAM NOE, and JOHN BALLANTYNE, individually and on behalf of all persons similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: 5:22-cv-00051 |
| GLENN ALLEN HEGAR JR., in his individual and official capacities as TEXAS COMPTROLLER OF PUBLIC ACCOUNTS, and his official and custodial capacities as CHAIRMAN OF THE TEXAS TREASURY SAFEKEEPING TRUST COMPANY and administrator of Texas Unclaimed Property Funds; JOANI BISHOP, in her individual and official capacities as DIRECTOR OF UNCLAIMED PROPERTY REPORTING AND COMPLIANCE, TEXAS COMPTROLLER OF PUBLIC ACCOUNTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT – CLASS ACTION

Plaintiffs Philip James, William Noe, and John Ballantyne, individually and on behalf of all persons similarly situated, for their Complaint against defendants Glenn Allen Hegar Jr., in his individual and official capacities as Texas Comptroller of Public Accounts, and his official and custodial capacities as Chairman of the Texas Treasury Safekeeping Trust Company and administrator of Texas Unclaimed Property Funds; and Joani Bishop, in her individual and official capacities as Director of Unclaimed Property Reporting and Compliance, Texas Comptroller of Public Accounts, allege:

### PRELIMINARY STATEMENT

1.  This action is brought under 42 U.S.C. § 1983 for declaratory relief, preliminary and permanent injunctive relief, an accounting and other relief based on the unconstitutional and unlawful conduct of Defendants acting *ultra vires* in their individual and official capacities under color of state law. Plaintiffs and putative Class Members are property owners who have had their property seized without notice and sometimes sold and generally mishandled by the custodial Defendants.

2.  Defendants have misused a seemingly benign set of laws (Texas Property Code §§ 71.001-76.704), known as the Texas Unclaimed Property Act ("UPA"), to take private property from people and businesses without meeting the basic threshold requirements for escheatment because they have not "abandoned" or "lost" their property and they are not "unknown." Moreover, Defendants have perpetrated their misuse of the UPA without the requisite notice and due process.

3.  Defendants' actions in taking possession of Plaintiffs' private property that falls completely outside of the statutes without adequate notice to Plaintiffs and putative Class Members, and then selling property without notice to the property owners, or without their consent, violates the express provisions of the UPA, the Texas Constitution, Article I, Section 19, and the United States Constitution, including the Contract Clause of Article I, Section 10, and the Fourth, Fifth, and Fourteenth Amendments, the latter of which states that no state shall "deprive any person of life, liberty, or property without due process of law." These policy decisions and actions directly caused the injury described herein that was inflicted on the Plaintiffs and putative Class Members.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. This action arises under the right to be free from unreasonable seizures in the Fourth Amendment, the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and the Contract Clause of Article I, section 10, of the United States Constitution arising from Defendants' actions as custodians of a General Revenue Fund that contains private property known as "Unclaimed Property Funds." (See Texas Property Code § 74.601(b)).

5.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, the Plaintiffs reside in this district, and had their property seized while they resided in this district.

PARTIES

A. Plaintiffs

6.   Plaintiff Philip James resides in Bexar County, San Antonio, Texas and is a Texas citizen. Mr. James has lived his whole life at the same residence in San Antonio, Texas. In 2020, $188 of Mr. James' funds were seized by the Texas Comptroller of Public Accounts ("Comptroller") without notice, his knowledge or consent, and while he was living in Texas. Separately, in 2019, Charles Schwab, which was holding Mr. James' retirement account, informed him that it had transferred all funds in his retirement account to the Texas State Comptroller's Office "as a matter of law." That financial institution refused to help him locate the transferred funds and told him to check with the Comptroller's Officer. Mr. James, who does not own a computer, contacted the Texas State Comptroller's Office, who told him that it had no record of funds transferred from his financial institution to their office, and had no record of any funds in the amount of his retirement account in their possession. Mr. James never received any notice from the Comptroller's Office of his money being transferred to the Comptroller's Office. The Comptroller's Office lists numerous "unclaimed property" accounts of substantial amounts of money in its possession with the owner listed as the financial institution, not the private property owner's name. Requests to Charles Schwab for records have revealed that Mr. James' retirement account in the amount of $305,203.56 was escheated to the state, as reflected below from Schwab's customer service records:

4



7. Mr. James' retirement account was closed by Schwab and escheated to the state despite Mr. James' express directions to Schwab that he wished to maintain an account with Schwab and that his address had remain unchanged, as reflected below from Schwab's customer service records:

8. Plaintiff William Noe resides in Bexar County, San Antonio, Texas, and is a Texas citizen. Mr. Noe possessed an accounts receivable credit balance with Reed Elsevier Inc. & Affiliates in the amount of $468.72. Other than the legally-inadequate posting of Mr. Noe's property on the comptroller's website, no notice was provided to Mr. Noe, despite the fact Mr. Noe's account exceeded the $100 threshold in the UPA requiring notice. A screenshot of Mr. Noe's entry on the comptroller's website is shown below:

| Select an Action | Property ID | Owner Name | Address | City | State | ZIP Code | Holder Name | Property Type | Amount | Year Reported |
|---|---|---|---|---|---|---|---|---|---|---|
| CLAIM | 18146253 | WILLIAM NOE ATTORNEY | 66 BREES BLVD | SAN ANTONIO | TX | 78209 | REED ELSEVIER INC & AFFILIATES | ACCOUNTS RECEIVABLE CREDIT BALANCE | $468.72 | 2017 |

9. Plaintiff John Ballantyne resides in Bexar County, San Antonio, Texas, and is a Texas citizen. Mr. Ballantyne had accounts with multiple Holders, including IBC Bank, Chase, Wells Fargo, and E-Trade, each of which were improperly escheated by the state. In violation of fundamental due process, the Comptroller has failed to identify both the property type and the Holder of Mr. Ballantyne's property, as reflected in the screenshot of the comptroller's website, below:

| Select an Action | Property ID | Owner Name | Address | City | State | ZIP Code | Holder Name | Property Type | Amount | Year Reported |
|---|---|---|---|---|---|---|---|---|---|---|
| CLAIM | 62385208 | JOHN BALLANTYNE | 707 RIDGEMONT AVE | SAN ANTONIO | TX | 78209 | NOT DISCLOSED | NOT DISCLOSED | $100.00 | 2019 |

## B. Defendants

10. Defendant Glenn Allen Hegar Jr. was elected in November 2014 as the Texas Comptroller of Public Accounts and currently holds that ·position. (See Texas Government Code § 312.011(2)). Defendant Hegar also serves as the Chairman of the Texas Treasury Safekeeping Trust Company and is the administrator of the Texas Unclaimed Property Funds. Defendant Hegar is sued in his official and individual capacities. Defendant Hegar may be served with process at: Texas Comptroller of Public Accounts, Lyndon B Johnson State Office Building, 111 East 17th Street, Austin, Texas 78744.

11. Defendant Hegar is custodian and administrator of over $6 billion in Unclaimed Property Funds, currently held in the Texas Unclaimed Property Security Trust Account, in the Comptroller's General Revenue Fund, much of which belongs to citizens who reside in the State of Texas. Defendant Hegar is responsible for securing property and funds maintained in the State of Texas and for properly enforcing the UPA. (See Texas Government Code § 404.104). Defendant Hegar, since his election in 2014, has failed to ensure that the Texas Comptroller's Office, and Director of Unclaimed Property, has complied with the notice requirements of the Texas Property Code and of the Texas and United States Constitutions before taking citizen's personal and real property. Defendant Hegar, absent legal action from the Court, will not stop his wrongful and unconstitutional acts described herein.

7

12. Joani Bishop is currently the Director of Unclaimed Property Reporting and Compliance for the Texas Comptroller of Public Accounts. Defendant Bishop is responsible for carrying out many of the actions set forth in this Complaint, which include ensuring compliance with providing proper notice to abandoned property owners of the public regarding the seizure and sale of "lost" and "unclaimed" property. Despite her obligations, Defendant Bishop disregarded the law and failed to provide reasonably adequate notice as required by the Texas Property Code, the Texas State Constitution, and the United States Constitution before taking citizen's personal and real property. Defendant Bishop may be served with process at: Texas Comptroller of Public Accounts; Lyndon B Johnson State Office Building, 111 East 17th Street, Austin, Texas 78744.

### FACTUAL BACKGROUND

**A. Defendants Used the Unclaimed Property Fund to Satisfy Budget Shortfalls**

13. As the Texas Comptroller of Public Accounts, defendant Hegar is Texas's chief financial officer, accountant, treasurer, and economic forecaster who performs many functions important to the state budget. In addition to these duties, defendant Hegar is responsible for collecting state taxes, tracking almost 600 separate revenue and spending funds, and ensuring that state agencies stay within their budgets.

14. In July 2020, defendant Hegar projected a $4.6 billion deficit for the state's then current two-year budget ending in August 2021. In January 2021, the 2020-2021 projected budget deficit was reduced to $946 million by defendant Hegar in his January Biennial

Revenue Estimate for the 2022-23 Biennium. Shortly thereafter, in May 2021, Comptroller Hegar again updated his projected revenue estimate, this time projecting a surplus of $725 million for the two-year budget ending in August 2021. Finally, only two months later, in July 2021, Hegar estimated a $5 billion surplus for the 2020-21 budget, citing reductions in the General Revenue appropriations and surging revenue collections.

15. The Texas Constitution prohibits the legislature from appropriating an amount of money greater than the estimated amount that will be collected in revenue. (Section 49a, Article III, Texas Constitution.) Thus, defendant Hegar certifies an annual appropriations bill only if it is within the Constitutional revenue limits. Once certified, it goes to the governor for approval. (Section 49a, Article III, Texas Constitution.)

16. The Texas Constitution prohibits the legislature from appropriating more than the anticipated revenue during the next biennium. (Section 49a, Article III, Texas Constitution.) The same section of the Constitution requires the Comptroller to "submit to the Governor and to the Legislature upon its convening a statement under oath showing fully the financial condition of the State Treasury at the close of the last fiscal period and an estimate of the probable receipts and disbursements for the then current fiscal year. There shall also be, in that statement, an itemized estimate of the anticipated revenue ... to be credited during the succeeding biennium...." (Section 49a, Article III, Texas Constitution.) This submitted statement is referred to as the Biennial Revenue Estimate (BRE).

17. The BRE contains not only the information required by the Constitution, but also other fiscal information. For example, the BRE for the 86th Legislature includes:

- statements regarding the different revenue sources for the state and the anticipated amount of revenue from these sources;

- a statement on the economic outlook for Texas, which includes both historic information and a forecast; and

- an accounting of funds in the state treasury.

(Biennial Revenue Estimate, 2020-2021 Biennium, 86th Texas Legislature, Glenn Hegar, Texas Comptroller of Public Accounts (January 7, 2019).

18. After the general appropriations bill has been approved by both houses of the legislature, it must be certified by the Texas Comptroller. The Texas Constitution states that "no bill containing an appropriation shall be considered as passed or be sent to the governor for consideration until and unless the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds." (Section 49a, Article III, Texas Constitution.) If the general appropriations bill exceeds this limit, the comptroller returns the bill to the house in which it originated. The legislature must either reduce the level of appropriations or generate additional revenue, which is usually accomplished by passing a tax bill or other revenue measures.

19. After the general appropriations bill has been certified by the Comptroller, it becomes the General Appropriations Act upon being signed by the Governor.

20. The General Revenue Fund consists of non-dedicated general revenue and general revenue-dedicated accounts. The non-dedicated portion of the General Revenue Fund serves as the state's primary operating fund. Expenditures may be made directly from non-dedicated general revenue, or, in some cases, revenue may be transferred from non-dedicated general revenue to special funds or accounts. The non-dedicated portion of the General Revenue Fund provides legislators the most discretion in spending.

21. Texas's worsening budget condition was the impetus and excuse for Defendants not to provide notice and to seize Plaintiffs' and putative Class Members' private property in violation of the UPA and the Constitution. Plaintiffs' and putative Class Members' property was labeled as a "revenue source" that could be used to mitigate the worsening budget deficit.

**B. Defendants' Misuse of Texas's Unclaimed Property Law (UPA)**

22. Defendants are skirting the requirements of the UPA to seize private property from persons and entities and convert it for use as revenue for the State. First, the Comptroller uses the enforcement provisions of the UPA (Texas Property Code §§ 74.701-704.712) to unlawfully coerce financial institutions, businesses, and nonprofits, etc. to surrender Plaintiffs' and putative Class Members' private property to the Comptroller. None of the property that is the subject of this action falls within the definition of "unclaimed property" or "abandoned property" as defined in §§ 72.001 and 72.101 of the UPA.

23. Specifically, the Holders' records disclose the identity of the property owners. The seized property is thus not eligible to be escheated to the Comptroller under the UPA. (See Texas Property Code § 72.001). Holders, despite knowing the property owners' identities from their own records, report to the Comptroller that the property owner is in fact the Holder itself. Also, despite knowing the property owner's last known address, or having had account "activity" within the preceding three years, Holders nonetheless transfer the property, to the Comptroller while simultaneously reporting that the property owner's last known address is unknown and that the "abandonment period" has run. Holders also fail to provide adequate notice to property owners before transferring the property to the Comptroller. The Comptroller, knowing all of this, allows Holders to unlawfully transfer this property to the Comptroller, which it accepts.

24. Next, Defendants violated the Federal and State Constitutional rights of the property owners by failing to provide notice required by Texas Property Code §§ 74.1011, 74.201, 74.401, *et seq.* that the Comptroller intends to take custody of their property. In the context of a government taking, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[1] This may include an

---

[1] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Richards v. Jefferson County*, 517 U.S. 793 (1996) (res judicata may not apply where taxpayer was not informed of prior case and where taxpayer interests were not adequately protected).

obligation, upon learning that an attempt at notice has failed, to take "reasonable follow-up measures."[2] In addition, notice must be sufficient to enable the recipient to determine what is being proposed and what he must do to prevent the deprivation of his interest.[3] Ordinarily, service of the notice must be reasonably structured to assure that the person to whom it is directed receives it.[4] Moreover, the UPA requires that the Comptroller provide "notice" to each reported owner, save §§ 74.202, governing items valued under $100, which requires no notice at all, unless the comptroller determines "that the publication of that information is in the public interest."

25. Third, Defendants, in many instances, unlawfully sell Plaintiffs' property, again in violation of the procedural requirements of the UPA, U.S. Constitutional Due Process requirements of the Fifth and Fourteenth Amendments, and Due Course of Law of the Texas Constitution, Article 1, Section 19.

26. Fourth, Defendants breached their fiduciary duties as custodians of others' property by failing to render an accounting and mishandling the property. In some cases, the mishandling includes mislabeling the owners or addresses of the property accounts, in violation of Texas Property Code § 74.603 & 74.702, as discussed herein.

---

[2] *Jones v. Flowers*, 547 U.S. 220, 235 (2006) (state's certified letter to property owner that his property would be sold unless he satisfied a tax delinquency was returned "unclaimed"; state should have taken additional reasonable steps to give notice to property owner).

[3] *Goldberg v. Kelly*, 397 U.S. 254, 267–68 (1970).

[4] *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Robinson v. Hanrahan*, 409 U.S. 38 (1974); *Greene v. Lindsey*, 456 U.S. 444 (1982).

27. Fifth, Defendants wrongfully commingle Plaintiffs' and Class Members' private property with the Texas General Revenue Fund. After comingling, the proceeds are used to supplement the State's budget, and to pay general State debts. Despite telling the public that the "[s]tate shall assume custody of the property and responsibility for its safekeeping" (Texas Property Code § 74.304), Defendants are wrongfully commingling the Unclaimed Property Funds with the State's General Revenue Fund (in violation of Texas Property Code §§ 74.601 & 76.60), which, Plaintiffs assert, place the private property beyond the reach of its rightful owners.

28. The Comptroller has no authority under either the UPA or any other legitimate delegation of power to undertake any part of the scheme alleged in this Complaint.

## C. Defendants' Actions Were Ultra Vires and Violated the Constitution

29. Defendants acted *ultra vires* and failed to uphold the law in the following manner:

   a. Defendants failed to provide notice and due process as required by Texas Property Code §§ 74.201, 74.402, 74.1011, *et seq.*, of the UPA, the Texas and United States Constitutions, which resulted in the unconstitutional taking of property by the Defendants. Defendants acted complicitly to perpetrate the willful and explicit violation of §§ 74.201, *et seq.* of the UPA. Defendants were responsible for providing notice to the public in the form of direct mail notice to known property owners and publication notices to others. (*See, e.g.,* Texas Property Code § 74.1011.) Defendants knowingly disregarded these duties.

14

b. Defendants commingled private funds held in the Unclaimed Property Fund with public funds held in the non-dedicated portion of the Texas General Revenue Fund, which serves as the State's primary operating fund. The State, by and through Defendants, made expenditures from the non-dedicated portion of the Fund Without waiting for the UPA required vesting period;

c. On investigation of counsel, including extensive review of the Comptroller's records identifying holder financial institutions as "owners" of purportedly unclaimed property, and on information and belief, Defendants collude with certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of Texas, pursuant to the UPA and other laws, and Defendants provided active assistance to, and engaged in, collusion with the regulated entities in violation of the law. This failure to obtain these significant funds directly caused and continue to cause the injury alleged by Plaintiffs and putative Class Members;

d. Defendants failed, and continue to fail, to provide the Constitutional and statutorily required notices before taking personal property from Plaintiffs and putative Class Members. The practical effect of Defendants' failure to provide adequate notice, and obfuscating the identification and location of private property, means that - for practical purposes - ownership of Plaintiffs' and putative Class Members' property will likely permanently vest to the State.

    e.   Defendants seized, sold, and destroyed (and continue to do so) the contents of private bank safety deposit boxes without notice to the owners, in violation of the Fourth and Fourteenth Amendments, which contains various private property.

30. To summarize, our State and Federal Constitutions and the State's UPA laws do not permit the seizure and sale of private property, for public use, without adequate notice and Due Process of Law. The fact that Defendants subsequently sell the unlawfully seized property, commingle the funds with other accounts in the General Revenue Fund, and then use those funds to generate interest for the State of Texas does not sanitize the process. (See Texas Property Code § 76.60(a), etc.).

31. Likewise, the fact that some of the unconstitutional conduct may have originated in an earlier administration does not relieve Defendants of their obligation to enforce the law nor does it relieve Defendants of liability for their own wrongdoing.

## D. Defendants Knowingly Violated Their Constitutional Duties.

32. Defendants swore binding oaths of office to uphold the Texas and United States Constitutions. Instead, Defendants violated, and continue to violate, these oaths by taking and selling private property without notice and due process of law and allowing Holders to retain Plaintiffs' and putative Class Members' funds. Defendants' actions create personal liability on the part of Defendants. Specifically, Defendants' conduct violated the Texas Constitution, Article I, Section 19, and the United States Constitution,

Article I, Fourth, Fifth and Fourteenth Amendments, the latter of which states that *no state* shall "deprive *any person* of life, liberty, or *property* without due process of law," and the Contract Clause of Article I, Section 10. This conduct directly caused the injury alleged by the Plaintiffs and putative Class Members in this action.

**E. Unclaimed Property Law (UPA), Texas Property Code Section 74, *et. seq.***

33. Defendants have violated and continue to violate the UPA by confiscating the property of *known* owners, without statutorily required adequate notice, and selling their private property without their knowledge. The specific statutory violations are as follows:

> **1. Defendants Failed to Determine Whether Plaintiffs Met the Threshold Requirements of the UPA.**

34. Defendants are charged with the responsibility to uphold the UPA and protect the public from its misapplication. (See Texas Property Code § 74.701, *et seq.*). At all times Plaintiffs' identities and locations were known or should have been known by reasonable due diligence. Defendants failed to carry out their statutory obligations to police the Holders (see Texas Property Code §§ 73.301 & 74.701, *et seq.*) and require them to notify Plaintiffs prior to escheat as required by the UPA (Texas Property Code §§ 74.101 & 74.1011), in addition to carrying out the Comptroller's own notice obligations under UPA §§ 74.1011, 74.201 & 74.402, *et al.*

35. As evidence of this fact, all three named Plaintiffs have never received mail, at their current addresses, from the Comptroller, before the taking of their private property.

36. The UPA, in effect, became a tool for some Holders (companies and financial institutions) to divorce themselves from unwanted account holders, which resulted in reduced administrative costs, increased retained earnings, and increased control, among other advantages for the Holders.

**2. Defendants Failed to Provide Statutory Notice.**

37. Under UPA §§ 74.1011, 74.201, 74.203, and 74.402, Defendants were required to provide adequate notice to the Plaintiffs through the most effective and efficient method possible, including by publication of notice to unknown property owners and direct mail to known property owners, consistent with the principles discussed in "hornbook" constitutional law treatises. Defendants, however, did not provide adequate notice, through the most effective means, from 2014 to present. In fact, the only notice provided by Defendants to Plaintiffs and potential Class Members was the Texas Comptroller's website, which does not comport with the UPA's own notice requirements of providing notice within the county of the property owner's last known address.

38. At all relevant times, § 74.1011(a) (Required Notice by Holder) has provided that the Holder of a person's property shall provide written notice to the owner, 60 days before transferring the property to the Comptroller, to the owner's last known address, stating the Holder has the property and will transfer it to the Comptroller if not claimed.

39. At all relevant times, § 74.201(a) (Required Notice by Comptroller) has dictated that the notice to the property owner, "[m]ust be provided."

40. At all relevant times, § 74.203 (Authorized Notice by Comptroller) has provided that:

> (a) During the calendar year immediately following the year in which the report required by Section 74.101 is filed, <u>notice may be mailed to each person who has been reported with a Texas address and appears to be entitled to the reported property</u>.
>
> (b) The notice under Subsection (a) <u>must conform to the requirements for notice under Section 74.201(b)</u>.

41. At all relevant times, § 74.402 (Notice of Property Sale by Comptroller) has provided that the Comptroller:

> "<u>shall publish notice of the sale in a newspaper of general circulation in Travis County or in the county where the sale is to be held</u>. If the public sale is to be held on the Internet or by an online auction, the comptroller may post the notice on the comptroller's own website before the seventh day preceding the date on which the sale or auction is held."

42. Defendants, failed to provide the constitutional forms of notice by publication and direct mail required by Chapter 74 from 2014 to present. The Comptroller's website, for example, was constitutionally deficient notice as a matter of law and does not satisfy the UPA or the Due Process and Due Course of Law requirements of the United States and Texas Constitutions. Defendants were fully aware of these facts at the time they failed to provide adequate constitutional notice.

43. Defendant Hegar, in his official capacity as Texas Comptroller of Public Accounts and Chairman of The Texas Treasury Safekeeping Trust Company, is the custodian of property that was seized and sometimes sold ultra vires of his statutory authority and

without notice, and placed into the Texas Comptroller's General Revenue Fund, maintained and managed (as authorized by Texas statute) by the Texas Treasury Safekeeping Trust Company. (See Texas Government Code § 404.102).

44. Defendants failed to exercise due care, acted arbitrarily and capriciously, and ultra vires of their statutory authority, and in doing so violated various statutes and laws, as well as fundamental federal and state constitutional rights.

CLASS ALLEGATIONS

45. Plaintiffs bring this case on behalf of themselves and all other individuals similarly situated under Federal Rule of Civil Procedure 23(b)(1)(A), (b)(2), and (b)(3).

46. The proposed Class is defined as:

All persons or entities whose property was escheated to the State of Texas between 2014 and the present without adequate notice.

47. The number, identity, and location of persons in the proposed Class is unknown at this time, but based on Defendants' own records for the period of 2014 to present, including the Comptroller's website, the number of persons in the proposed class is estimated to be around 538,000. These people are dispersed throughout Texas and the world. Those persons in the Class are, therefore, so numerous that joinder of the entire proposed Class is impractical. The disposition of their claims in this class action lawsuit will provide substantial benefits to the parties and the Court.

48. There are questions of law and fact common to all putative Class Members, to-wit, whether Defendants violated, and continue to violate, the constitutional Due Process of

Law notice requirement of the Fourteenth Amendment, perform unlawful seizures of private property under the Fourth Amendment, perform unlawful Takings under the Fifth Amendment, and unlawfully deprive putative Class Members of private property without Due Course of Law under Section 19, Article 1 of the Texas Constitution's Bill of Rights when the Defendants take and/or sell proposed Class Member's private property on behalf of the Texas Comptroller.

49. Plaintiffs' claims are typical of those of the putative Class Members, who are subject to the same deprivations of their rights and misapplication of the law by Defendants. There is a well-defined community of interest in the questions of law and facts involved in this case.

50. Plaintiffs can adequately represent the putative Class Members' interests. Plaintiffs have no interests relevant to the lawsuit's subject matter that are antagonistic to the putative Class Members. Their attorneys are highly experienced in complex, class action litigation.

51. Because Defendants' duties to comply with the Constitution apply equally to all in the putative Class, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

52. Defendants' actions and threatened actions are depriving and will continually deprive Plaintiffs and putative Class Members of their Constitutional rights on grounds

generally applicable to all, thereby making appropriate declaratory, injunctive, and other equitable relief regarding the proposed Class as a whole.

53. The issues and questions of fact and law are common to the putative Class Members and predominate over questions that may affect individual members.

54. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VII. CLAIMS FOR RELIEF

### COUNT I: DECLARATORY RELIEF

55. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

56. A real and actual controversy exists between Plaintiffs and Defendants concerning Defendants' duties under the various statutes and laws that define their duties. Specifically, Plaintiffs seek a declaration that Defendants:

    a. Failed to provide notice and satisfy due process requirements under the provisions of Texas Property Code §§ 74.201, 74.402, and 74.1011, and the Texas and United States Constitutions, which resulted in the unconstitutional taking of personal property by the Defendants;

    b. Allowed certain companies and financial institutions to retain property and funds that rightfully belong to the citizens of Texas under the UPA and other laws and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

22

    c. Seized, sold, and destroyed the contents of private bank safety deposit boxes without notice to the owners in violation of the U.S. Constitution (Fourth, Fifth, and Fourteenth Amendments) and Texas Constitution, Article I, Section 19;

    d. Failed to fulfill obligations to enforce the requirement that corporations met their obligations under Texas Property Code §§ 74.101 and 74.1011 and in all other ways complied with the UPA;

    e. Acted ultra vires by failing to provide notice and satisfy due process requirements under the provisions of Texas Property Code §§ 74.201, 74.402, and 74.1011, and the Texas and United States Constitutions, which resulted in the unconstitutional taking of private property by the Defendants.

57. The dispute between Plaintiffs and Defendants is actual and concrete, and involves a significant financial burden unilaterally imposed on Plaintiffs based on the loss of their property. A determination by the Court of the rights and duties of the parties is necessary and proper at this time in order that Plaintiffs may ascertain their rights and establish, as a matter of law, that Defendants have violated their obligations and duties under the above laws such that Plaintiffs and Class Members are entitled to the disgorgement and return of either their property or the return of the reasonable value thereof and to avoid future unlawful takings by the Defendants.

### COUNT II: VIOLATION OF 42 U.S.C. § 1983 (PROCEDURAL DUE PROCESS)

58. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

59. The Due Process Clause of the United States Constitution, and the Due Course of Law Clause of the Texas Constitution, prohibit Defendants from depriving citizens of protected property interests without Due Process and Due Course of Law.

60. Plaintiffs and putative Class Members have constitutionally protected property interests in their private property that they own but, nevertheless, was transferred to the State of Texas from 2014 to present.

61. Defendants deprived Plaintiffs and putative Class Members of their constitutionally protected property interest by seizing, and sometimes selling, their property without the notice required by statute, federal Constitutional Due Process, and state Due Course of Law, ultra vires of their statutory authority.

62. Defendants' failure to comply with the requirements of the Due Process Clause of the United States Constitution and Due Course Clause of the Texas Constitution, as applied, in the manners alleged above, has resulted in substantial monetary losses to Plaintiffs and Class Members.

63. Based on the foregoing, Plaintiffs and all similarly situated persons, are entitled to and hereby seek the return of the proper value of their property from the Texas General Revenue Fund, which was denied to them as a result of Defendants' violation of the Due Process and Due Course of Law rights, guaranteed by the Texas and United States Constitutions, as applied to the UPA. Specifically, Plaintiffs' property should be valued according to the applicable principles of law for reimbursement purposes.

COUNT III:  VIOLATION OF 42 U.S.C. § 1983 (TAKINGS CLAUSE)

64. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

65. The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the State of Texas from taking private property for public use without just compensation.

66. As set forth more fully above, Defendants have unlawfully taken control of and liquidated the property of Plaintiffs and putative Class Members without the notice required by statute and federal Constitutional Due Process, and state Due Course of Law, ultra vires of their statutory authority.

67. To the extent that Plaintiffs' property remains held in the Comptroller's General Revenue Fund, Plaintiffs seek restitution of the proper value of their property in Count II. To the extent that said Plaintiffs' property was converted to public use, Plaintiffs seek in this Count just compensation for their property. Specifically, Plaintiffs' property should be valued according to the applicable principles of law for reimbursement purposes.

68. Based on the foregoing, Plaintiffs are entitled to and hereby seek damages and just compensation for the property seized for public use as a result of Defendants' violations of the Takings Clause of the United States Constitution. In the alternative, Plaintiffs seek damages from all Defendants, jointly and severally, in their individual capacities.

## COUNT IV: ACCOUNTING

69. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

70. Defendants never provided Plaintiffs or putative Class Members notice of the true state of affairs that the Texas Comptroller had taken possession of their property. Defendants do not enforce the UPA and have acted arbitrarily and capriciously, ultra vires of their statutory authority.

71. The total amount of the Plaintiffs' injury, which includes not only improperly seized property that may or may not have been sold, also includes other investments and property rights, such as dividends and improperly paid interest, the proper calculation of principal and interest, and the unnecessary fees, costs, and taxes, cannot be ascertained without an accounting for such property.

## COUNT V: ATTORNEYS' FEES AND COMMON FUND

72. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

73. Plaintiffs, in acting as individual representatives for all injured property owners will, by their success in this litigation, create a common fund consisting of all property received from the improper acquisition of private property and funds without notice and Due Process of Law, and Due Course of Law, that must necessarily be refunded by Defendants to other affected property owners, savings of future costs, fees and taxes that will not have to be paid.

74. In creating such a fund, Plaintiffs are acting in good faith on behalf of all claimants as individual representatives and are entitled to be paid for their expense in prosecuting this action pursuant to Federal Rule of Civil Procedure 23 and 42 U.S.C. § 1988.

75. This Court has equitable power to order the payment by Defendants of Plaintiffs' legal expenses from any funds held by and disgorged from Defendants in their budget and appropriated by the Legislature, from the common fund thus created.

### Count VI:  Injunctive Relief

76. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

77. Plaintiffs and putative class members have no plain, adequate, or speedy remedy at law, and will suffer significant, permanent, and irreparable harm unless the Court issues preliminary and permanent injunctive relief ordering Defendants to comply with the law, as set forth above, and to return Plaintiffs' property and the Property belonging to the potential Class Members.

78. Plaintiffs, as property owners, seek an injunction compelling Defendants to immediately cease all unlawful conduct as described herein and to properly administer the UPA.

### Count VII: Breach of Fiduciary Duty.

79. Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

80. Defendants were and are legally required to safeguard Plaintiffs' and the putative Class Members' property. *See, e.g.,* Texas Property Code § 74.304(a).

81. Defendants are legally required to hold Plaintiffs' property on behalf of Plaintiffs and the putative Class and to not commingle Plaintiffs' property with Defendants' operating accounts.

82. By accepting their positions and promising to follow the Texas and United States Constitutions, Defendants agreed to act for the benefit of Plaintiffs and the Class. Instead, Defendants acted for their own benefit and the benefit of other third parties.

83. Defendants may only escheat property under certain express conditions. But Defendants have taken property belonging to Plaintiffs' and the Class without meeting these conditions, in direct violation of their fiduciary duty to safeguard this property.

84. Defendants' failure to properly safeguard Plaintiffs' property violated their fiduciary duty to not engage in self-dealing, to deal fairly and honestly, to act with good faith and loyalty, to act with strict integrity and full disclosure, and to act with candor.

85. These breaches of duty both harmed Plaintiffs and the Class and benefitted Defendants, in the amount of property improperly taken, plus interest.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants, jointly and severally, as follows:

(1) For restitution of the value of the property of Plaintiffs and the Class from the private Unclaimed Property Fund in a sum according to proof at the time of trial;

(2) For a declaration that Defendants:

(a) Failed to provide notice and due process pursuant to the UPA and the Texas and United States Constitutions, which resulted in the unconstitutional taking of private property by Defendants;

(b) Commingled private funds held in the Unclaimed Property Fund with public funds held in the General Revenue Fund of the State of Texas;

(c) Allowed certain companies and financial institutions to retain property and funds that rightfully belong to Plaintiffs and the putative Class under the UPA and the Federal and State Constitutions and provided active assistance to and engaged in collusion with the regulated entities in violation of the law and at taxpayer expense;

(d) Seized, sold, and destroyed without notice to the owners in violation of the Fourth, Fifth, and Fourteenth Amendments, the contents of private bank safety deposit boxes; and

(e) Failed to verify that businesses fulfilled their obligations under Texas Property Code § 74.101, *et seq.*, and in all other ways complied with the UPA.

(3) To the extent that private funds have been converted to public use, restitution of such funds, or damages equal to the value of the private property taken for public use, in a sum according to proof at the time of trial;

(4) General and special damages from Defendants, and each of them, in their individual capacities, in a sum according to proof at the time of trial;

(5) For punitive and exemplary damages in an amount appropriate to punish and set an example of Defendants in their individual capacities;

(6) For equitable and injunctive relief as determined by the Court, including but not limited to, imposition of a constructive trust over an accounting of any and all transactions unlawfully entered into by Defendants without the appropriate notification of the public;

(7) In the alternative, Plaintiffs seek damages from all Defendants, jointly and severally, in their individual capacities;

(8) A permanent injunction restraining Defendants from engaging in the following:

   (a) Failing to provide notice and due process pursuant to, and in the form required by, the provisions of Texas Property Code § 74.001, *et seq.* of the UPA;

   (b) Failing to pay interest in accordance with the UPA and applicable law;

   (c) Improperly commingling private funds escheated to the State held in the Unclaimed Property Fund with public funds held in the General Revenue Fund of the State of Texas;

   (d) Allowing any known company or financial institution to retain property and funds that are subject to escheat or transfer pursuant to the UPA;

   (e) Shredding, altering, or destroying any documents necessary to determine the identity of any owner of property held by the Texas Comptroller pursuant to the UPA;

(f) Destroying or altering original testamentary instruments (*e.g.*, wills and trusts), insurance policies, and personal correspondence escheated or transferred to the Texas Comptroller's custody;

(g) Accepting any escheated property from any holder without verification that the holder properly fulfilled its obligations under the UPA; and

(h) Prohibiting future unlawful and/or improper transactions, as alleged in this Complaint and to promulgate public rule-making;

(9) Restitution and disgorgement of all ill-gotten gains, including principal and related interest, to the public and/or claimants in the form of an order requiring Defendants to refund the property taken from Plaintiffs and putative Class Members that Defendants obtained by engaging in conduct that violates the UPA, and Texas and Federal Constitutions;

(10)    For an accounting;

(11)    For creation of a common fund;

(12)    For a reasonable sum of attorneys' fees pursuant to Federal Rule of Civil Procedure 23, 42 U.S.C. § 1988, and other laws, as incurred and to be incurred by Plaintiffs in connection with this action;

(13)    For appointment of undersigned counsel as class counsel;

(14)    For an order certifying the proposed class under Federal Rule of Civil Procedure 23(b)(1)(A), 23(b)(2), or alternatively 23(b)(3);

(15)    For all costs incurred by Plaintiffs and to be incurred by Plaintiffs in connection

with this action; and

(16)    For such other and further relief as the Court deems equitable and just.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.


Dated:  January 21, 2022                                Respectfully submitted,

By: _____                    Richard M. Paul III
Jonathan Greiner                                   *Pro hac vice forthcoming*
State Bar Number 24101830                          Sean R. Cooper
Christopher Ross                                   *Pro hac vice forthcoming*
State Bar Number 24103331                          **PAUL LLP**
**GREINER & ASSOCIATES, PLLC**                     601 Walnut Street, Suite 300
401 Austin Highway, Suite 200                      Kansas City, Missouri 64106
San Antonio, TX 78209                              Telephone: (816) 984-8100
Telephone: (210) 824–6529                          Fax: (816) 984-8101
Fax: (210) 829–5528                                Rick@PaulLLP.com
service@greinerattorneys.com                       Sean@PaulLLP.com


**ATTORNEYS FOR PLAINTIFFS**